# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,  )<br>           )<br>         Plaintiff,  )<br>v.          )<br>           )<br>Jose Luis Espinoza,  )<br>           )<br>         Defendant.  )<br>           )<br>_____ ) | CR-04-0203-TUC-DCB (JM)<br><br>**ORDER** |

      Pending before this Court is the Report and Recommendation of Magistrate Judge Marshall, the Defendant's Objection thereto, and the Government's Response. This Court performed a de novo review of the Report and Recommendation, pursuant to 28 U.S.C. § 636(b). For the reasons set forth below, this Court adopts the Report and Recommendation (Doc. No. 214) and denies Defendant's Motion to Suppress (Doc. No. 191). A jury trial in this matter is set for February 14, 2006.

## BACKGROUND

      Defendant was indicted and being criminally prosecuted for conspiracy to transport and harbor illegal aliens, in violation of 8 U.S.C. §§1324(a)(1)(A)(ii), 1324(a)(1)(A)(iii), 1324(A)(1)(A)(v)(1), and 1324(a)(1)(B)(i).

      On January 23, 2006, Defendant filed "Objections to Report and Recommendations, Request to Reopen the Suppression Hearing based on Newly Discovered Evidence and Request to Substitute Evidence." (Doc. No.

235.)[1]  Defendant's Objection to the Report and Recommendation was timely filed on January 23, 2006.  On February 6, 2006, Plaintiff filed a Response.

Judge Marshall issued the Report and Recommendation as to Defendant Espinoza on November 8, 2005 after conducting a hearing on October 19, 2005.  (Doc. No.  214.)  During the hearing, Defendant Espinoza was present and represented by counsel and testified on his own behalf. Three witnesses were presented by the Government: Border Patrol Agents Kevin Hecht, Louis P. Valentino, Jr., and Tim D. Kouris.

## MOTION TO SUPPRESS HEARING

The following is a summary of the motion to suppress hearing conducted before the Magistrate on October 19, 2005.

On April 23, 2003, Espinoza was arrested for alien smuggling. (Tr. 45.)  That same day, he was taken to the Santa Cruz County Jail on an outstanding warrant.  (Tr. 57.) The next day, Espinoza was returned to Border Patrol custody and Senior Patrol Agent Louis P. Valentino, Jr., along with his partner, Jason May, interviewed Espinoza because, the agents contend, Espinoza had told the processing agent that he had information regarding alien smuggling in Nogales. (Tr. 14, 45, 57.)  In the interview, Espinoza provided general information related to the locations and transportation methods related to alien smuggling, but the information was deemed too general to act upon.  (Tr. 16.)  At that point, Agent Valentino and his partner gave Espinoza their cell phone numbers and told Espinoza to call them with any information he gathered

---

[1] The Court has determined to treat this document as Defendant's Objection to the Report and Recommendation and will not allow Defendant to file a second Objection.

related to alien smuggling. (Tr. 17.) Espinoza contends that he was told that due to his cooperation he was not going to be charged and that he would be released. (Tr. 58.)

In contrast, the agents contend that Espinoza was explicitly informed that he was giving the information on his free will and that he was not working for the Border Patrol. (Tr. 18.) Agent Valentino testified that Espinoza was also told that if he was to get in trouble with the law, the agents would be unable to help him out. (Tr. 18.) Additionally, although Agent Valentino stated that no deal was made with Espinoza in relation to whether he would be prosecuted, he was told that if the information he provided proved reliable and led to successful prosecutions, there was a possibility that he would be paid. In any event, Espinoza was not prosecuted at that time. (Tr. 20.)

Subsequent to his release, Agent Valentino recalls that Espinoza called him and left messages "a couple times," and Valentino also tried to contact Espinoza "a couple of times," but was not successful. (Tr. 22.) Espinoza's recollection of events is that Agent Valentino went to his house or met him at the Food City market on four or five occasions. (Tr. 58-59.) Espinoza contends that he was told that the information he provided "was turning out real good," and that he would receive $50.00 per person apprehended after he had identified a "certain amount of people . . . ." (Tr. 59-60.) Agent Valentino testified that Espinoza did provide the agents with some information, but it proved to be too general and the agents did not act on it. (Tr. 22.)

On January 28, 2004, Espinoza was again arrested for transporting illegal aliens. (Tr. 20, 47-48.) Senior Border Patrol Agent Tim Kouris

3

1  placed Espinoza under arrest after conducting surveillance of two
2  vehicles, a green Ford Explorer and a maroon Lincoln Continental. (Tr.
3  48.)  At the time of his arrest, Espinoza, along with his wife and two
4  children, was in the Lincoln Continental at the McDonald's parking lot
5  on Crawford Street and Terrace Avenue in Nogales, Arizona. (Tr. 21, 48.)
6  Agent Valentino was on scene and he recognized Espinoza. (Tr. 21, 49.)
7  Valentino, along with Agent Kouris, pulled Espinoza aside and Valentino
8  read him his rights.  (Tr. 21, 55.)  Valentino does not recall if
9  Espinoza said anything at that time. (Tr. 21.)

10     Later, along with Senior Patrol Agent Esmeralda Marroquin,
11 Valentino interviewed Espinoza at the Nogales Border Patrol station.
12 (Tr. 20, 65.) Valentino again read to Espinoza his rights and requested
13 that he sign a Form I-214 rights sheet, which he was willing to do. (Tr.
14 22-23, 25, 66; Exhibit 1.)  The rights sheet is also signed by Agent
15 Valentino, as the agent who read the rights, and Agent Marroquin, as a
16 witness. (Tr. 24.) Valentino then conducted an audiotaped interview of
17 Espinoza, which was later transcribed (first by the government and then
18 by Defendant). (Tr. 25-26; Exhibit 2 (government prepared transcript).)

19     The government prepared transcript of the interview conditionally
20 admitted into evidence during the hearing reflects that, after his rights
21 were administered, Espinoza told the agents that he had received a call
22 requesting that he pick-up two men near the K-Mart in Nogales and drive
23 them back to the border.  (Exhibit 2, pp. 3-6.)  He then claimed that he
24 and his brother went to K-Mart in separate vehicles and that the men got
25 in his brother's vehicle, the green Explorer. (Id., pp. 7-8.)  Espinoza
26 then stated that his brother, with Espinoza following, then proceeded to

28                                    4

the McDonald's, where they were apprehended. (Id., p. 8.) After listening to this story, Valentino confronted Espinoza with information obtained during the agent's surveillance of Espinoza's activity that day. (Id., pp. 8-10.) Espinoza then admitted that he had twice accompanied his brother when illegal aliens were loaded into his brother's vehicle. (Id., p. 12.)

**DEFENDANT'S OBJECTIONS**

The basis for Defendant's Objection/Request to Reopen is "newly discovered" evidence regarding the transcription of the audiotape of the interview of Defendant from January 28, 2004. Defendant originally asked the Plaintiff to have the tape transcribed. Defendant did not receive the government's transcription of the interview until the suppression hearing. The tape was at the hearing. During the suppression hearing, the transcript is clear that the Defendant had possession of the tape of the interview for over a year prior to the hearing.  Also during the hearing, Defendant admits to having listened to the tape sometime before hearing and asked to listen to it again to compare with the government prepared transcript. The Court adjourned the suppression hearing for the Defendant to again listen to the tape and compare it to the government prepared transcript. (Tr. 32-34.)

During the hearing, Defendant testified that there were a total of four individuals in the room (including Defendant) during the interview. (Tr. 65.)  Agent Valentino's consistent testimony was that two agents were present during the interview, himself and Agent Esmeralda Marroquin. (Tr. 20, 22, 40.)  (Agent Marroquin did not testify at the suppression hearing.)

Defendant does raise the issue of an additional person during the interview at the time of the hearing, because it was the subject of Defendant's direct examination. (Tr. 65.) It was also the subject of the Plaintiff's cross examination of Defendant during the suppression hearing. (Tr. 76.) This issue is never directly raised as a problem with the Magistrate; not even in closing by the Defendant. (Tr. 94-97.) The issue of a third interviewer is not raised as a concern in the Magistrate's Report and Recommendation.

The first time the issue of a third interviewer was raised by the Defendant as a problem was in the Objection/Request to Reopen for New Evidence. After the hearing, Defendant had his own transcriber produce a transcript. Defendant represents in that motion, as follows: "Counsel sent the tape to a transcriber with whom he had worked in the past and who possessed sophisticated machines to better listen to tapes....The main difference to note is that there are, in fact, two males and one female examiner in the room with Defendant and they all asked questions of Defendant." (Objection at 2.) Because credibility was a big factor listed by the Magistrate Judge in making her ruling, Defendant urges that this "new evidence" goes to credibility and should be resolved by reopening the hearing.

After a review of both interview transcripts, there are some differences, but none of them significant or relevant. Defendant asserts that there is a portion of time after the tape "ran out" that certain promises were made to him by Agent Valentino and neither transcript gives any indication of supporting that claim. The testimony from the witnesses at the hearing tracks the taped interview of the Defendant with

6

no substantive deviations. The Magistrate Judge conditionally granted use of the tape of the interview, but Defendant did not renew his objection in a timely fashion.

In the present case, Defendant offers no explanation why he waited over at least a year before having the tape transcribed himself. Defendant listened to the tape prior to the hearing and during the hearing, but never addresses the number of people present during the January 2004 interview as an issue. The issue is not addressed until a month before trial. Furthermore, this information was clearly made a part of the record at the time of the suppression hearing. In any case, Defendant's request to reopen is not properly founded on newly discovered evidence and it not a sufficient basis to cancel the trial date and reopen the suppression hearing.

The Magistrate recommended that there was no reason to suppress Defendant's statements because she found that: his *Miranda* rights were properly administered, and his statements were voluntary and not coerced by any promises made to him by the interviewing agents. The suppression hearing testimony supports that conclusion, standing alone, without consideration of the tape or the transcript of the tape. The primary complaint made by the Defendant in the motion to suppress was that the tape machine stopped working and then promises were made to Defendant off the tape. There is no evidence to support that complaint after a review of either transcript.

Granting a motion to reopen a suppression hearing is appropriate where there is new evidence relevant to the issue of suppression. *See United States v. Rabb,* 752 F.2d 1320, 1323 (9th Cir. 1984) (reopening of

suppression hearing is proper "if the record reveals matters" which affect the suppression determination), *cert. denied,* 471 U.S. 1019 (1985); *United States v. Tzakis,* 736 F.2d 867, 872 (2d Cir. 1984) (upholding denial of motion to reopen "[i]n the absence of any further factual developments"). Because the new evidence in this case does not go to the heart of the Magistrate Judge's credibility determination underlying the denial of Defendant's suppression motion, the district court is not compelled to reopen to consider the government witnesses' credibility in light of evidence that was available to the parties and the Court during the suppression hearing.

The district court has conducted a de novo review of the transcript of the suppression hearing, as well as the parties' pleadings and the Report and Recommendation, *United States v. Raddatz*, 447 U.S. 667, 674-76 (1980), and has determined to adopt the Magistrate's Report and Recommendation.

**CONCLUSION**

IT IS ORDERED that the Magistrate's Report and Recommendation (Doc. No. 214) is ADOPTED in its entirety.

IT IS FURTHER ORDERED that the Defendant's Motion to Suppress Statements and Objection/Request to Reopen Suppression Hearing (Doc. Nos. 191, 235) are DENIED.

DATED this 8th day of February, 2006.

David C. Bury
United States District Judge